UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID W. KIGHT, etc.,

    Plaintiff,

v.                                           Case No. 3:06-cv-419-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

    Defendant.

## OPINION AND ORDER[2]

### I. Status

David W. Kight is appealing the Social Security Administration's denial of his claim for Disability Insurance Benefits. His alleged inability to work is based on "lower back [and left] knee injuries[.]" Transcript of Administrative Proceedings (Tr.) at 110 (capitalization omitted). Plaintiff was found not disabled by Administrative Law Judge (ALJ) William H.

---

[1] Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue, Commissioner of Social Security, is substituted as Defendant herein.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #18).

Greer in a Decision entered on September 12, 2005. Tr. at 20, 28, 30 (Finding 12). Mr. Kight has exhausted the available administrative remedies and the case is properly before the Court.

Plaintiff raises one issue. It is argued the judge "erred by rejecting the testimony of Dr. Robert Silvera, the plaintiff's treating physician." Memorandum in Support of Complaint (Doc. #17; Memorandum) at 4.

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if . . . supported by 'substantial evidence[.]'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Despite the

---

[3] "Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

existence of support in the record, the ALJ's determination may not be insulated from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

Plaintiff asserts the ALJ improperly rejected a treating physician's testimony. Memorandum at 4.  Specifically, Mr. Kight points to Dr. Silvera's "agree[ment] with [his] need to lie down." *Id.* at 6.

"[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis."  *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Phillips*, 357 F.3d at 1240. "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."  *Edwards*, 937 F.2d at 583; *see Phillips*, 357 F.3d at

- 3 -

1240-41.  However, the ALJ may not simply substitute his judgment for that of a medical expert.  *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam).  "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true."  *MacGregor*, 786 F.2d at 1053.

On October 6, 2003, Dr. Silvera responded affirmatively to a question as to whether it "[w]ould . . . be reasonable to expect, or even predictable, . . . for Mr. Kight to require 6 to 7 episodes per day of lying down for 30 to 45 minutes at a time, as a pain management technique[.]"[4]  Tr. at 411; *see also id.* at 640 (Claimant's testimony about need to lie down six or seven times a day, "normally . . . with a heating pad or a[n] ice pack").  Additionally, a Physical Capacities Evaluation form from 2005 indicates a need to lie down once or twice "at unpredictable intervals during a work shift[.]"  *Id.* at 562, 575.

The ALJ's residual functional capacity (RFC) finding does not incorporate any need to lie down during the workday.  *See id.* at

---

[4]  In addition to the need to lie down as a pain management technique, Claimant also states that, "[a]ccording to Dr. Silvera the need to rest and . . . lie down is caused by the side effects of medications."  Memorandum at 7; *cf., e.g.,* Tr. at 539-44 (record of prescriptions for morphine sulfate), 640 (Claimant's testimony about need to lie down "[e]specially if [he has] taken [his] morphine"); *Physicians' Desk Reference* 2526 (54th ed. 2000) (morphine sulfate's side effects include lightheadedness, dizziness, and sedation, and noting "[s]ome adverse reactions in ambulatory patients may be alleviated if the patient lies down").

25. The judge indicates he "considered the opinions rendered by Dr. Silvera[,]" *id.* at 26, but determined they "are entitled to little weight." *Id.* at 27. In regard to the evidence from this physician, the ALJ reasoned "that no physical-related limitations are enumerated in the treatment records[.]" *Id.* The judge pointed to "inconsistencies with the objective findings of record, coupled with the fact that Dr. Silvera rendered only conservative treatment to the claimant[.]" *Id.* He "conclude[d] that the objective findings and the degree of limitation reflected in the medical evidence of record [are] out of proportion with the evaluation set forth in" three exhibits attributed to Dr. Silvera. *Id.*

In discussing the evidence in the record believed to undermine the alleged need to lie down, the ALJ specified records from Drs. Lancaster, Green, Such, and Dehgan. *Id.* at 26. Still, it is difficult to view such records as sufficiently refuting the alleged need to lie down during a workday. Unlike the inquiring letter sent to Dr. Silvera and the Physical Capacities Evaluation form, the evidence from these physicians reveals they were not explicitly questioned about whether Mr. Kight would require break periods during which he could lie down.

Further, Dr. Lancaster's opinions suggest he focused only on certain of Plaintiff's conditions, primarily involving his knee problems. *See, e.g., id.* at 203 (not taking into account back

impairment or restrictions; deferring to another doctor in relation to issues surrounding Claimant's back), 212 (similar), 292 (addressing knee and shoulder), 300 ("back condition would be addressed by his treating physicians").  The neurological report attributed to Dr. Green includes no attempt at describing work limitations.  *See id.* at 469-72.  While the evaluation mentions "bizarre posturing" thought "to be factitial[,]" it goes on to note Claimant "has the largest ruptured lumbar disc [the examiner had] ever seen[.]"  *Id.* at 471 (capitalization omitted).  Additionally, the examiner "would have no problem with continuing him on his Percocet" in light of the ruptured disc and indicated a need to "be referred to a neurosurgeon."  *Id.* at 472.  As for Dr. Such, the ALJ points only to findings of "no cyanosis, edema or clubbing; and Dr. Such reported that the claimant presented with full range of motion with good distal pulses throughout."  *Id.* at 26.  How this evidence contradicts the need to lie down is far from apparent--and the judge's analysis fails to acknowledge Dr. Such determined Mr. Kight suffers from "uncontrolled chronic pain[.]"  *Id.* at 485 (capitalization omitted).  Finally, the evaluation from Dr. Dehgan, as the opinion of an examining doctor, would not ordinarily be entitled to deference.  *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). Moreover, Dr. Dehgan's opinions are "based" in part on a "history" that appears substantially

incomplete. *Id.* at 456. While "[a] review of records from Dr. Steven Lanca[]ster" is recounted, *id.*, there is no indication evidence from Dr. Silvera was considered.

The remaining reasons offered by the ALJ for his refusal to recognize a need to lie down are also unsatisfactory. According to the judge, "no physical-related limitations are enumerated in the treatment records[.]" *Id.* at 27. Although Dr. Silvera occasionally comments on Mr. Kight's need to refrain from working, *see, e.g., id.* at 254, 265, 304, 325, the records are quite understandably focused on discussing the Claimant's immediate medical problems and response to treatment, not on constructing an assessment as to precisely what work-related activities are impacted. The evidence illustrates this physician made therapeutic decisions with reference to the results of objective tests and his own clinical observations. *See, e.g., id.* at 252, 260-63, 266, 268, 306, 318, 325.

What the ALJ seems to be attempting to convey is a sense that Dr. Silvera's notes depict a patient with minor ailments, requiring "only conservative treatment[.]" *Id.* at 27. A conclusion along these lines is rendered dubious by both the extensive summary of medications prescribed to Claimant, many by Dr. Silvera, *see id.* at 539-58, and the numerous unsatisfactory treatment results and alternative plans described in the physician's notes. *See, e.g.,*

- 7 -

*id.* at 249 (difficulties with pain patch), 250 (referral for surgical consult), 254 (need to take double dose of Percocet led to prescription of patch), 260 (pain medication not sufficient), 261 (no relief reported six days after epidural injection), 264 (same), 304 (extreme back pain despite wearing leg brace, injection performed but helped only somewhat), 308 (second opinion should be sought regarding hip surgery), 310 ("hip has still not been addressed and he continues to walk with a rotated leg"), 318 (brace not working; pain medication changed), 319 ("I was hopeful that he would be able to return to sedentary type duty, . . . [but] things have not worked out as anticipated and a leg brace is appearing to be useless."), 320 ("We have yet to address his low back condition and we are still awaiting correction of his gait pattern and more effective treatment for his knee pain."), 322 (brace not working; pain medication increased), 325 (pain medication ineffective even when lying down), 326 ("requesting a changing of orthopedic surgeons regarding his knee so that we get better service and more aggressive decision making[;]" pain medication switched), 327 (pool therapy discontinued due to increased pain after the exercises); *see also id.* at 234 (note from Arnold Graham Smith, M.D., describing Dr. Silvera's prescribing "10 mg of Percocet" every six hours as "a very high level of medication").

Lastly, the judge indicated he was "reject[ing]" several opinions (including those finding a need to lie down) because "they are significantly at odds with . . . the claimant's testimony regarding his functional abilities[.]" *Id.* at 27. Perhaps the ALJ is harkening back to this synopsis of Mr. Kight's testimony:

> The claimant is able to sit, stand and walk for brief periods without difficulty, so long as he is able to alternate between postural positions. The claimant admitted that he is able to do some driving and some grocery shopping. He testified that he watches television, visits with his family and puts model cars together.

*Id.* at 26; *see also id.* at 636-39, 641, 643.

Plaintiff testified to driving his son to and from school "about half the time[,]" as there were occasions he could not make even the one-and-a-half mile trip. *Id.* at 672. He grocery shopped only once a month. *Id.* at 676. Neither these activities, nor the other testimony mentioned, demonstrate Mr. Kight can get through a workday without experiencing the need to lie down to manage his pain. In any event, the ALJ should have identified the testimony he was referring to and explained how it was "significantly at odds with" the allegations at issue.[5]

In light of the foregoing discussion, this case will be remanded with instructions for the ALJ to reconsider the evidence

---

[5] It might also be worth noting the ALJ's RFC finding is based in part on his assertion "the medical record reveals that none of the claimant's treating or examining physicians recommended him as a candidate for back surgery." *Id.* at 26. *But see, e.g., id.* at 210, 225, 259, 334.

from Dr. Silvera and reassess Claimant's need to lie down during the workday.[6]

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) reconsider the opinions of Dr. Silvera; 2) reassess Claimant's need to lie down during the workday; and 3) conduct any other proceedings deemed proper.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2007.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and pro se parties, if any

---

[6] The judge dismissed the Physical Capacities Evaluation, which corroborated the need to lie down during the workday, noting it "was not signed by a physician." *Id.* at 27. Plaintiff maintains this record is "from Dr. Lloyd" and is reflective of his assessment. Memorandum at 6. The evaluation appears twice in the current record. One copy seems to have been signed on behalf of Dr. Lloyd. *See* Tr. at 562. The other, submitted to the Appeals Council, bears the additional signature of a medical doctor. *See id.* at 575; *see also id.* at 567. On remand, the ALJ will have an opportunity to consider this evidence.